T.C. Summary Opinion 2021-1

UNITED STATES TAX COURT

PAUL B. BRUNEAU AND KAREN L. BRUNEAU, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7968-18S.                Filed January 21, 2021.

Aksel Bagheri, for petitioners.

Albert B. Brewster II, for respondent.

SUMMARY OPINION

GUY, Special Trial Judge: This case was heard pursuant to the provisions

of section 7463 of the Internal Revenue Code in effect when the petition was

filed.[1] Pursuant to section 7463(b), the decision to be entered is not reviewable by

---

[1]Unless otherwise indicated, all section references are to the Internal

<span style="float:right">(continued...)</span>

any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined that petitioners (husband and wife) are liable for Federal income tax deficiencies and penalties for the taxable years 2014 and 2015 (years in issue) as follows:

| Year | Deficiency | Accuracy-related penalty sec. 6662(a) |
|---|---|---|
| 2014 | $32,692 | $6,538 |
| 2015 | 33,558 | 6,711 |

Petitioners filed a timely petition for redetermination with the Court pursuant to section 6213(a). They resided in California when the petition was filed.

After concessions,[2] the issues remaining for decision are (1) the amounts of petitioners' gross receipts for the years in issue, (2) whether petitioners are entitled

_____

[1](...continued)
Revenue Code (Code), as amended and in effect for the taxable years 2014 and 2015, and Rule references are to the Tax Court Rules of Practice and Procedure. All monetary amounts are rounded to the nearest dollar.

[2]Petitioners concede that they are not entitled to deductions for "Other" expenses of $22,000 and $29,724 for 2014 and 2015, respectively; vehicle expenses of $20,358 and $13,800 for 2014 and 2015, respectively; utility expenses of $6,256 and $10,546 for 2014 and 2015, respectively; and meals and entertainment expenses of $1,707 for 2014. Other adjustments are computational only.

to depreciation deductions of $23,204 and $37,091 for 2014 and 2015, respectively, (3) whether petitioners are entitled to deductions for travel expenses while away from home of $5,660 and $6,169 for 2014 and 2015, respectively, and (4) whether petitioners are liable for accuracy-related penalties under section 6662(a) for the years in issue.

## Background[3]

During the years in issue petitioners operated Dog's Day Inn (DDI), a kennel facility offering boarding and grooming services for dogs and cats. In addition Mrs. Bruneau earned $35,000 to $50,000 during each of the years in issue serving as a professional handler at dog shows and competitions.[4]

## I. Petitioners' Tax Returns

Petitioners filed joint Federal income tax returns for the years in issue and attached Schedules C, Profit or Loss From Business, to those returns reporting gross receipts and expenses attributable to DDI and Mrs. Bruneau's dog show activities.

---

[3]Some of the facts have been stipulated.

[4]Although Mrs. Bruneau was aware of the trial in this case, she did not appear or otherwise participate in the proceedings.

A. Gross Receipts

1. 2014

Petitioners reported gross receipts of $385,178 on Schedule C for 2014. The Internal Revenue Service (IRS) examined petitioners' return, conducted a bank deposits analysis, and determined that they had failed to report gross receipts of $9,945.

2. 2015

Petitioners reported gross receipts of $421,169 on Schedule C for 2015. The IRS examined petitioners' return, performed a bank account analysis (an examination technique that is less exacting than a bank deposits analysis), and accepted the gross receipts as reported by petitioners.

Shortly before trial, petitioners asserted that they had overstated gross receipts for 2015 by $36,745. Petitioners made some deposits to DDI's account in 2015 from nontaxable sources, including proceeds from the repayment of a loan and equipment sales, a refund from a utility company, and transfers from family members.

B. Depreciation Deductions

In December 2000 petitioners paid $120,000 for the DDI property, which at that time included a house (which petitioners occupied as their home), two dog

kennels (one of which will be referred to as the old kennel), and several storage buildings.

### 1. Improvements

In 2004 petitioners completed construction of a 7,000-square-foot kennel (new kennel) which included an adjoining driveway, a small parking lot, and an exercise area for dogs. Mr. Bruneau kept a handwritten ledger identifying vendors, their contact information, and price estimates for work related to the new kennel. In May 2005 petitioners received a supplemental property tax assessment notice which increased the assessed value of the DDI property by $431,500. The notice stated that the increased assessment was attributable to new construction on the property.

In 2008 petitioners refurbished the old kennel and constructed a second residence (duplex) on the DDI property. Mr. Bruneau estimated that petitioners paid $67,000 to complete the old kennel project. He did not, however, testify as to the cost of constructing the duplex. During the years in issue Mrs. Bruneau's father resided in one of the duplex units, and petitioners used the other unit for storage.

In or around 2009 petitioners erected a chain link fence on the DDI property. Mr. Bruneau could not recall the amount that petitioners paid for the fence.

In 2010 petitioners constructed a block wall on the DDI property. Mr. Bruneau estimated that petitioners paid $67,000 for the block wall.

In 2012 petitioners added a garage and a carport to their home. Petitioners stored a combination of personal effects and dog and cat crates in the garage. Mr. Bruneau estimated that petitioners paid $45,000 for the garage and carport.

In June 2015 petitioners agreed to pay $139,104 to have solar panels installed on the DDI property. Solar panels were installed on the new kennel and on petitioners' home.

2. Forms 4562

a. 2014

Petitioners attached Form 4562, Depreciation and Amortization, to their tax return for 2014 and claimed deductions for section 179 expenses of $12,637, a special depreciation allowance for qualified property placed in service during 2014 of $5,250, a modified accelerated cost recovery system (MACRS) deduction for assets placed in service before 2014 of $17,691, and a deduction for 15-year property placed in service during 2014 of $263.

Respondent allowed the deduction for section 179 expenses (attributable to a washer and dryer) but disallowed the remaining deductions totaling $23,204 for lack of substantiation.

### b. 2015

Petitioners attached Form 4562 to their tax return for 2015 and claimed depreciation deductions of $37,091 comprising MACRS deductions for assets placed in service before 2015 of $18,190, a deduction for 5-year property placed in service in 2015 of $18,700, and a deduction for nonresidential real property of $201. Respondent disallowed all depreciation deductions for 2015 for lack of substantiation.

### 3. Missing Records

Petitioners did not provide direct evidence of the amounts they paid for the various improvements to the DDI property described above or the amounts of depreciation deductions they claimed for years before 2014. Mr. Bruneau explained that petitioners' former accountant was in possession of their original records and that he had disappeared.

Petitioners produced a depreciation schedule that apparently was attached to their California State income tax return for 2014. The schedule lists eight items, including three items identified as "IMPROVEMENTS", two items identified as

"KENNEL", a storage garage, a washer/dryer, and a kennel extension wall. The schedule lists the dates that the items were acquired, cost basis, prior depreciation, and current depreciation totaling $18,216.

### C. Travel Expenses

Petitioners claim that they are entitled to deduct travel expenses of $5,660 and $6,169 for 2014 and 2015, respectively. The expenses purportedly relate to Mrs. Bruneau's trips to dog shows.

Petitioners produced a calendar with entries identifying the town or city where Mrs. Bruneau served as a dog handler and the distance in miles that she traveled by car to attend the show. Petitioners also produced schedules listing hotels where they stayed on overnight trips, restaurants where they purchased meals, and amounts they paid for meals and lodging. The record includes a few checks which appear to represent payments to Mrs. Bruneau for dog handler services.

## II. Tax Return Preparation

Petitioners' tax returns for the years in issue were prepared by a tax return preparer. Mr. Bruneau acknowledged that petitioners did not review the completed returns for accuracy and completeness before signing them.

## III.  Section 6662(a) Penalties

On August 28, 2017, the revenue agent who examined petitioners' returns submitted Form 300, Civil Penalty Approval Form, to her immediate supervisor. The Form 300 recommended the imposition of section 6662(a) penalties on the theory that petitioners' underpayments of tax were due to negligence.  On November 29, 2017, the revenue agent's immediate supervisor sent a 30-day letter to petitioners proposing adjustments to their tax returns for the years in issue, including penalties under section 6662(a).  On December 6, 2017, the revenue agent's immediate supervisor signed the aforementioned Form 300.

## Discussion

The Commissioner's determination of a taxpayer's liability in a notice of deficiency normally is presumed correct, and the taxpayer bears the burden of proving that the determination is incorrect.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

## I.  Gross Receipts

Section 61(a)(2) defines gross income as all income from whatever source derived, including gross income derived from business.  Persons subject to Federal income tax are required to keep records sufficient to establish gross income.  See sec. 6001; see also sec. 1.6001-1(a), Income Tax Regs.

A. 2014

Where a taxpayer fails to maintain adequate records, the Commissioner is authorized to compute the taxpayer's income by any method which clearly reflects income, including the bank deposits method. See sec. 446(b); Nicholas v. Commissioner, 70 T.C. 1057, 1064 (1978). A bank deposit is prima facie evidence of income. Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). The bank deposits method assumes that all money deposited in a taxpayer's bank account during a given period constitutes taxable income, but the Commissioner must take into account any known nontaxable source or deductible expense. DiLeo v. Commissioner, 96 T.C. 858, 868 (1991), aff'd, 959 F.2d 16 (2d Cir. 1992).

Respondent analyzed DDI's bank deposits and determined that petitioners understated Schedule C gross receipts for 2014 by $9,945. Petitioners bear the burden of proving that respondent's determination of income using the bank deposits method is erroneous. See Clayton v. Commissioner, 102 T.C. 632, 645-646 (1994).

At trial respondent conceded that petitioners demonstrated that they made deposits of $7,122 to DDI's account from nontaxable sources, leaving $2,823 in dispute. Although petitioners maintain that they correctly reported gross receipts of $385,178 for 2014, they failed to provide any probative evidence to account for

the balance of the deposits remaining in dispute. Consequently, we conclude that petitioners had unreported gross receipts of $2,823 for 2014.

B. 2015

Petitioners reported gross receipts of $421,169 for 2015--an amount that closely aligned with total deposits to DDI's account for that year. Shortly before trial, petitioners asserted that their tax return preparer had overstated DDI's gross receipts by erroneously including $36,745 from nontaxable sources in the calculation.

Gross receipts reported on a tax return are admissions that must be overcome with cogent evidence. See, e.g., Pratt v. Commissioner, T.C. Memo. 2002-279. Petitioners maintain that they presented sufficient evidence to establish that they overstated gross receipts. We disagree.

Petitioners rely primarily on a spreadsheet which was prepared by DDI's bookkeeper in 2017 (after petitioners filed their 2015 tax return) purportedly showing that DDI collected a total of $330,934 for boarding, grooming, and certain fees from its clients. Petitioners state that the spreadsheet "appears to be an input of all of the invoices from the kennel."

The Court is not persuaded that the 2017 spreadsheet provides a sound baseline for determining petitioners' gross receipts. DDI's bookkeeper did not

appear at trial and there is no evidence in the record explaining the process the bookkeeper used in preparing the spreadsheet or why the document was prepared after petitioners had filed their tax return for 2015. In sum, petitioners have provided an incomplete and unreliable summary of their gross receipts. Respondent's determination that petitioners correctly reported gross receipts on Schedule C for 2015 is sustained.

II. Deductions for Depreciation and Travel Expenses

Deductions are a matter of legislative grace, and the taxpayer generally bears the burden of proving entitlement to any deduction claimed. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). A taxpayer must substantiate deductions claimed by keeping and producing adequate records that enable the Commissioner to determine the taxpayer's correct tax liability. Sec. 6001; Hradesky v. Commissioner, 65 T.C. 87, 89-90 (1975), aff'd per curiam, 540 F.2d 821 (5th Cir. 1976); Meneguzzo v. Commissioner, 43 T.C. 824, 831-832 (1965). A taxpayer claiming a deduction on a Federal income tax return must demonstrate that the deduction is allowable pursuant to a statutory provision and must further substantiate that the expense to which the deduction relates has been paid or incurred. Sec. 6001; Hradesky v. Commissioner, 65 T.C. at 89-90.

Under section 162(a), a deduction is allowed for ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. Whether an expenditure satisfies the requirements for deductibility under section 162 generally is a question of fact. See Commissioner v. Heininger, 320 U.S. 467, 475 (1943). An ordinary expense is one that commonly or frequently occurs in the taxpayer's business, Deputy v. du Pont, 308 U.S. 488, 495 (1940), and a necessary expense is one that is appropriate and helpful in carrying on the taxpayer's business, Commissioner v. Heininger, 320 U.S. at 471; sec. 1.162-1(a), Income Tax Regs.

When a taxpayer establishes that he or she paid or incurred a deductible expense but fails to establish the amount of the deduction, the Court may sometimes estimate the amount allowable as a deduction. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930); Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). There must be sufficient evidence in the record, however, to permit the Court to conclude that a deductible expense was paid or incurred in at least the amount allowed. Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957).

A.  Depreciation Expenses

Section 167 permits as a depreciation deduction a reasonable allowance for the exhaustion and wear and tear of property used in a trade or business or held for the production of income.[5]  A depreciation deduction is determined by reference to the adjusted basis of the property, the applicable depreciation method, the applicable recovery period, and the applicable convention.  Secs. 167(c)(1), 168; Hosp. Corp. of Am. & Subs. v. Commissioner, 109 T.C. 21, 45 (1997).

A taxpayer is entitled to depreciate an asset once it is placed into service for its intended purpose and may depreciate that asset only until it is retired from service.  See Wilson v. Commissioner, T.C. Memo. 2002-61, aff'd, 71 F. App'x 623 (9th Cir. 2003); sec. 1.167(a)-10(b), Income Tax Regs.  To prove entitlement to a depreciation deduction, a taxpayer must establish the property's depreciable basis by showing the cost of the property, its useful life or recovery period, and any previously allowable depreciation.  See Cluck v. Commissioner, 105 T.C. 324, 337 (1995).

Petitioners claim that they are entitled to depreciation deductions of $23,204 and $37,091 for 2014 and 2015, respectively, related to the new kennel,

---

[5]Sec. 280A generally disallows deductions for expenses with respect to a dwelling unit used by the taxpayer during the taxable year as a residence.

rehabilitation of the old kennel, the block wall, the garage and carport, the duplex, the chain link fence, and the solar panels. Petitioners offered very little reliable, objective evidence, however, of the depreciable basis (the cost of improvements) or previously allowable depreciation in respect of the various improvements in question. Mr. Bruneau offered estimates of the dates of completion and the amounts that petitioners paid for the various improvements, a supplemental property assessment notice, and a 2014 depreciation schedule in support of their position.

Depreciation schedules prepared to facilitate filing a tax return are merely another form of the taxpayer's claim to a deduction and are insufficient to satisfy the taxpayer's burden of proof. See, e.g., Holden v. Commissioner, T.C. Memo. 2015-131, at *65. Moreover, petitioners did not provide income tax returns for years before 2014 to demonstrate previously allowable depreciation.

In sum, the evidence that petitioners offered is insufficient to substantiate the depreciation deductions in dispute, or to permit the Court to estimate the amount allowable as a deduction under the Cohan doctrine. Although we accept Mr. Bruneau's testimony that petitioners' former accountant disappeared with their tax records, we nevertheless are obliged on this record to sustain respondent's determination disallowing the depreciation deductions in dispute.

B.  Travel Expenses

Section 274(d) prescribes more stringent substantiation requirements to be met before a taxpayer may deduct certain categories of expenses, including travel expenses, meals and lodging while away from home, and expenses with respect to listed property as defined in section 280F(d)(4).  See Sanford v. Commissioner, 50 T.C. 823, 827 (1968), aff'd per curiam, 412 F.2d 201 (2d Cir. 1969).  The term "listed property" includes passenger automobiles.  Sec. 280F(d)(4)(A)(i).

To satisfy the requirements of section 274(d), a taxpayer generally must maintain adequate records or produce sufficient evidence corroborating his or her own statement which, in combination, are sufficient to establish the amount, date and time, and business purpose for each expenditure.  Sec. 1.274-5T(b)(2), (6), (c)(1), Temporary Income Tax Regs., 50 Fed. Reg. 46014-46017 (Nov. 6, 1985). Section 1.274-5T(c)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46017-46018 (Nov. 6, 1985), provides in relevant part that "adequate records" generally consist of an account book, a diary, a log, a statement of expense, trip sheets, or a similar record made at or near the time of the expenditure or use, along with supporting documentary evidence.  The Court may not use the rule established in Cohan v. Commissioner, 39 F.2d at 543-544, to estimate expenses covered by section

274(d). <u>Sanford v. Commissioner</u>, 50 T.C. at 827; sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).

Petitioners claim that they are entitled to deduct travel expenses for 2014 and 2015 related to Mrs. Bruneau's trips to various dog shows. Petitioners rely on a calendar with notations identifying travel dates and vehicle mileage, a spreadsheet listing expenses for meals and lodging, and related bank records.

As previously mentioned, Mrs. Bruneau did not appear at trial. Other than Mr. Bruneau's testimony, there is little evidence in the record reflecting payments to Mrs. Bruneau for dog handler services and the accuracy and reliability of Mrs. Bruneau's calendar. To the extent that we are able to link certain travel dates and related expenses with payments to Mrs. Bruneau for dog handler services, we conclude that petitioners have adequately substantiated that Mrs. Bruneau drove 532 miles and paid expenses of $1,074 for business purposes in 2014. There is insufficient evidence to support a finding that petitioners are entitled to a deduction for travel-related expenses for 2015.

III. <u>Section 6662(a) Penalties</u>

Section 6662(a) and (b)(1) imposes an accuracy-related penalty equal to 20% of the amount of any underpayment of tax that is due to the taxpayer's negligence or disregard of rules or regulations. An underpayment is defined

generally as the difference between the tax imposed on the taxpayer and the tax reported on the tax return. Sec. 6664(a).[6]

The term "negligence" includes any failure to make a reasonable attempt to comply with the provisions of the Code. Sec. 6662(c). Negligence includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly. See sec. 1.6662-3(b)(1), Income Tax Regs.

With respect to a taxpayer's liability for any penalty, section 7491(c) places on the Commissioner the burden of production, thereby requiring the Commissioner to come forward with sufficient evidence indicating that it is appropriate to impose the penalty. Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001). The Commissioner's burden of production includes showing that the immediate supervisor of the IRS employee who made the "initial determination" of a penalty (including a section 6662(a) penalty) approved that penalty in compliance with section 6751(b)(1). Clay v. Commissioner, 152 T.C. 223, 248 (2019); see also Chai v. Commissioner, 851 F.3d 190, 221 (2d Cir. 2017), aff'g in part, rev'g in part T.C. Memo. 2015-42. Once the Commissioner

_____

[6]Consistent with this definition, we reject petitioners' claim that any underpayments for the years in issue should be computed without regard to tax related to computational adjustments.

meets his burden of production, the taxpayer must come forward with persuasive evidence that the Commissioner's determination is incorrect. Rule 142(a).

Respondent has met his burden of production. As discussed above, petitioners failed to maintain adequate books and records needed to properly substantiate most of the expenses that they reported on Schedules C. In addition, the requirements of section 6751(b) have been met given that the immediate supervisor of the revenue agent who first proposed to impose the section 6662(a) penalties in question signed the 30-day letter sent to petitioners on November 28, 2017. See, e.g., Cuthbertson v. Commissioner, T.C. Memo. 2020-9, at *68-*69.

Section 6664(c)(1) provides an exception to the imposition of a penalty if it is shown that there was reasonable cause for the underpayment and the taxpayer acted in good faith. Reliance on the advice of a professional tax adviser may constitute reasonable cause and good faith, but a taxpayer must prove that: (1) the adviser was a competent professional who had sufficient expertise to justify reliance, (2) the taxpayer gave the adviser the necessary and accurate information, and (3) the taxpayer actually relied in good faith on the adviser's judgment. Neonatology Assocs. P.A. v. Commissioner, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002).

Petitioners did not offer a meaningful defense to the imposition of the accuracy-related penalties. Although Mr. Bruneau asserted that petitioners relied on their tax return preparer to properly prepare their tax returns, he acknowledged that they did not review the returns for accuracy and completeness before signing them. Petitioners have failed to show that they reasonably attempted to ascertain the correctness of the disallowed deductions or to comply with the provisions of the Code. Accordingly, we sustain respondent's determination that petitioners are liable for penalties under section 6662(a).

To reflect the foregoing,

<u>Decision will be entered under</u>

<u>Rule 155</u>.